UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 4:14-CV-13894TSH

KAI KUNZ, )
   Plaintiff, )
)
v. )
)
TOWN OF NORTHBRIDGE, ET AL., )
   Defendants, )

**PLAINTIFF, KIA KUNZ'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS', TOWN OF NORTHBRIDGE, ET AL'S, MOTION FOR SUMMARY JUDGMENT**

**I. Introduction:**

Plaintiff Kai Kunz, ("plaintiff") hereby opposes Defendants', Town of Northbridge, Police Chief Walter Warchol, Sgt. John Ouillette, Lt. Timothy Labrie, Officers Brian Petrinelli and Jarod Woeller's ("defendants") Motion for Summary Judgment**.** (Doc. 50) Plaintiff rebuts and contradicts defendants' statements of material facts (DSOF) and sets forth material facts (PSOF), to demonstrate the existence of genuine issues for trial which warrants denial of defendants' motion. Plaintiff incorporates by reference Defendants' Exhibits 1through 22, (Docs. 53) and Plaintiff's Exhibits 23 through 32, as set forth herein.

**II. Statement of Relevant Facts:**

Plaintiff alleges that his clearly established constitutionally protected rights were violated, under color of state law, when he was taken for a psychiatric evaluation which was deliberately not carried out in accordance with the mandates of M.G.L.A. c. 123 §12 et seq., and applicable regulations. (Ex. 28) Plaintiff claims violation of his privacy rights, rights against unreasonable searches and seizures, liberty rights, Miranda rights, rights against self-

incrimination, testimonial confrontation rights, right to counsel, due process rights, rights against cruel and unusual punishment under 42 U.S.C. §1983 (Count I), and, violations of Articles XII and XIV of the Massachusetts Constitution (Count X), and patient civil rights law in a Monell claim (Count IV), including the failure to give Lamb warnings. Plaintiff alleges defendants discriminated against plaintiff under the Americans with Disabilities Act (Count III), Under the Massachusetts Torts Claims Act, plaintiff sets forth claims of gross negligence, misrepresentation, civil conspiracy, abuse of process (Count VII), malicious prosecution (Count VIII), false imprisonment, battery, intentional infliction of emotional distress and negligent infliction of emotional distress (Count IX), and violations of M.G.L. c. 214, §1B (Count XII) and M.G.L.A. c. 12 §11(Count VI).

Police reports and certain hospital records falsely indicate that plaintiff was a voluntary mental health patient at Milford Hospital on October 18, 2011. (Ex. 31) Contrary to defendants' contention that Sgt. Ouillette was contacted by Defendant McCarthy about Kai Kunz on October 17, 2011, McCarthy had been calling the Northbridge Police for over a week concerning an alleged "hit list". (Ex. p. 47 ln. 21-24) McCarthy reported he had texts from plaintiff that proves his homicidal intent which were never further produced of investigated. (Ex. It was not objectively reasonable that defendants concluded a emergency mental health event existed on October 18, 2011, where potential hit list victims were not contacted by the police, plaintiff was not accompanied to the hospital by the defendants and defendants when asked about the police authority to make such an involuntary mental health commitment did not reference the condition precedent to their authority to act under M.G.L.A. c. 123 s. 12, the existence of an emergency. (Ex. 24 p. 78 ln. 13)  Contrary to defendants' contention the alleged altercation took place on

October 17, 2011, not October 16, 2011, and it was objectively false that McCarthy allegedly drove directly to the Northbridge Police Station from Haverhill after the alleged assault in approximately 35 minutes according to dispatch and police records. (Ex. 2, Ex. 3, Ex. 5, Ex. 9) Officer Dejordy directly questioned McCarthy's version of events and motives including the alleged drive time, not filing in Haverhill due to police corruption, prior arson investigations against McCarthy, lack of ant red marks on his neck consistent with strangulation with intent to murder which plaintiff argues vitiated claims of probable cause plaintiff was going to commit murder as his first lifetime criminal offense. (Ex. 3, Ex. 23 p. 98 ln. 13-15, Ex. 24 p. 47 ln. 19, p. 67 ln. 24) Plaintiff claims defendants did not consult with Milford hospital in violation of 104 C.M.R. §27.08(6).

The standards for a mental health commitment was known or should have been known by Defendants Lt. Labrie, Sgt. Patrinelli, Sgt. Ouillette and Chief Warchol, at the time of plaintiff's interrogation on October 18, 2011, and there is direct evidence that defendants decided to involuntarily commit plaintiff for an evaluation on October 17, 2011, at approximately 5:30 p.m. after speaking with McCarthy and prior to speaking with plaintiff.

**III. Standard of Review:**

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir. 1991) (internal quotation marks omitted). Summary Judgment is appropriate where, "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1stCir. 2002) (citing Fed. R. Civ. P. 56(c)). A "material" fact is "one that might affect the outcome of the suit under the governing law." *Vélez-Rivera v. Agosto-Alicea*, 437 F.3d 145,150 (1st Cir. 2006) (quoting *Morris v. Gov't Dev. Bank of Puerto Rico*, 27 F.3d 746, 748 (1st Cir. 1994)). For a dispute to be genuine, the evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open ended to permit a rational fact finder to resolve the issue in favor of either side. (see, *Nat'l Amusements, Inc. v. Town of Dedham*, 43 F.3d 731, 735 (1st Cir. 1995) (citation omitted). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners* I, 53 F.3d 454, 460 (1st Cir. 1995). When considering a motion for summary judgment, the Court construes the record in the light most favorable to the non-moving party and makes all reasonable inferences in favor thereof. *Sensing v. Outback Steakhouse of Florida, LLC,* 575 F.3d 145, 153 (1st Cir. 2009), and see, *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009)). The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. (Id., at 152.)

The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." (see, *Green Mountain Realty Corp. v. Leonard,* 750 F.3d 30, 38 (1st Cir. 2014) (citation to quoted case omitted). Plaintiff contends the facts and document references contained in his statement of material facts (SOF) meaningfully controverts defendants' Local Rule 56.1 factual statements in a concise and

specific manner that requires the Court to conclude that there is a genuine need for trial on plaintiff's claims and defendants' motion must be denied.

**IV. Argument:**

**a. The Defendants are Not Entitled to Immunity Pursuant to State Law Because Plaintiff was Not Properly Admitted for a Mental Evaluation Pursuant to M.G.L. c. 123 § 12(a)**

Plaintiff argues that the entity of the Town of Northbridge and individual defendants ("defendants") are not immune from liability under M.G.L.A. c.123 s. 22, because whether they acted in good faith compliance with M.G.L.A. c. 123 §12, is a genuine issue of material fact, which is greatly contested and defendants' conclusory statements that they complied with the statute and are not liable to plaintiff, fails to meet the burden of proof to grant a motion for summary judgment under Fed. R. Civ. P. Rule 56.

M.G.L.A. c. 123, § 12, provides that "in an emergency situation, if a physician, qualified psychologist, qualified psychiatric nurse, mental health clinical specialist or licensed independent clinical social worker is not available, a police officer, who believes that failure to hospitalize a person would create a likelihood of serious harm by reason of mental illness, may restrain such person and apply for the hospitalization of such person for a three day period at a public facility. (Ex. 28) M.G.L.A. c. 123 §22 states, in relevant part, "...police officers and licensed independent clinical social workers shall be immune from civil suits for damages for restraining, transporting, applying for the admission of or admitting any person to a facility or the Bridgewater state hospital if the physician, qualified psychologist, qualified psychiatric nurse mental health clinical specialist, police officer or licensed independent clinical social workers act pursuant to this chapter."

A person in Massachusetts may not be involuntarily committed unless he/she is mentally ill and dangerous as a result beyond a reasonable doubt. (see, *O'Connor v. Donaldson,* 422 U.S. 563 (1975), see also, *Commonwealth v. Nassar*, 380 Mass. 908, 916-918 (1980), *Superintendent of Worcester State Hosp. v. Hagberg*, 374 Mass. 271, 276 (1978), Ex. 28) Plaintiff has set forth material facts there was no emergency as statutorily required to authorize defendants' actions on October 17 and 18, 2011, and defendants otherwise failed to act pursuant to M.G.L.A. c. 123, and therefore the immunity provisions of the statute do not apply. (Ex. 23 p. 47 ln. 21-24, see, *McCabe Life Line Ambulance Service, Inc.,* 77 F.3d 540, 547 (1st Cir. 1996). Plaintiff emphatically rebuts defendants' contention that based on objectively false information about an alleged hit list and alleged threats made by the plaintiff to "rape and pillage", and given defendants' past dealings with the plaintiff, the police defendants had a good faith belief that the plaintiff required emergency psychiatric hospitalization before he could be seen by a psychiatrist. (PSOF, ¶¶ 9, 12, 15, 31, 22 and 40, Ex. 28, 31). There was no specific claim of any mental health issue pointed to by defendants with respect to any alleged "past dealings" with plaintiff. Failure to investigate McCarthy's prior false reports about plaintiff and deliberately bypassing the statutory protections designed to protect his rights does not constitute a good faith belief that an emergency involuntary commitment application was warranted at approximately 10:30 p.m. on October 18, 2011.(Ex. 32) Sgt. Ouillette admittedly had decided to file an emergency involuntary mental health commitment application based solely on McCarthy's hearsay information and told Lt. Labrie to commit plaintiff on October 18, 2011. (Ex. 8, Ex. 31) Pink slip applications were filled out by defendants before plaintiff was questioned. (Ex. 17 p. 6 ln. 13-23) Importantly, when questioned about their understanding of their M.G.L.A. c. 123 s. 12,

emergency powers, none of the officers acknowledged or referenced the need for an actual emergency where no designated psychiatrist is available as a legal condition precedent to their authority to arrest, detain and commit plaintiff. (Ex. 17 ln. 13-24, Ex. 18 ln. 31-32, Ex. 19 p. 7 ln. 6) There was no prior mental health history as misrepresented by defendants and their claim of probable cause is directly rebutted by the fact that the Northbridge Police did not accompany plaintiff to Milford Hospital as per claims of his dangerousness under the circumstances. (Ex. 24 p. 73 ln. 13).

Plaintiff argues under the plain words of the statute, that the immunity provisions of M.G.L.A. c.123 §22, do not apply to entities such as the Town of Northbridge and/or the Town of Northbridge Police Department. Moreover, plaintiff argues that the immunity provision of M.G.L.A. c.123 §22, would not be effective to grant immunity against a Section 1983 claim based on the deprivation of due process rights protected by the Fourteenth Amendment. (see, *Martinez v. California,* 444 U.S. 277, 284 n. 8 (1980)).

**b. The Defendants Are Not Entitled to Qualified Immunity Pursuant to Federal Law**

The First Circuit has held that a seizure pursuant to that provision requires a showing of probable cause, which it has defined as circumstances warranting a reasonable belief that the person to be seized has a mental health condition threatening serious harm to himself or others, and such probable cause must exist at the moment the arrest was made and be based on the first hand knowledge of the arresting officer or reasonably trustworthy information provided by a third party, which plaintiff claims was not the case here. (see, *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). An officer must have probable cause to seize an individual for an involuntary

psychiatric hold. *Ahern v. O'Donnell*, 109 F.3d 809, 817 (1st Cir. 1997). Plaintiff argues that his involuntary hospitalization violated his Fourth Amendment rights and protections against unreasonable searches and seizures as it applies to the involuntary hospitalization of persons for psychiatric reasons." *(see, Ahern v. O'Donnell*, 109 F.3d 809, 815 (1st Cir. 1997), see also, *Santiago v. Fenton*, 891 F. 2d 373, 383 (1st Cir. 1989)(4th Amendment violation occurs when there is a false arrest without probable cause). Defendants are not entitled to qualified immunity because there is a genuine issue of material fact whether the emergency application for psychiatric hospitalization failed to in good faith comply with the mandates of M.G.L.A. c.123 s, 12 and violated plaintiff's civil rights as a patient. (see, 104 CMR 3.10(5)) Absent an emergency, plaintiff's statutory and constitutional rights could only be adequately protected by proper court supervision, which is mandated under the statute. (Ex. 28) Plaintiff argues that only ….in an emergency situation in which none of the medical or mental health professionals listed above is available, a police officer who believes that failure to hospitalize a person would create a likelihood of serious harm by reason of mental illness may restrain the person and apply for his or her hospitalization for up to three days. (G.L. c. 123, § 12(a); 104 C.M.R. § 33.02). Plaintiff argues there is compelling evidence there was no emergency in this case and there is a genuine issue of material fact concerning this whether plaintiff's constitutional liberty interests were violated and defendants are not entitled to immunity or summary judgment. (*Newton-Wellesley Hosp. v. Magrini,* 451 Mass. 777, 784-785 & n.13 (2008), *Hashini v. Kahil*, 388 Mass. 607, 610 (1983), Ex. 23 p. 47 ln. 21-24)

Contrary to defendants' assertion, they did not speak with plaintiff for an extended period of time before it was decided that it became clear that he needed emergency mental health

attention and was an immediate risk to himself and others; Ouillette and Labrie testified that it was their intention to file for an emergency involuntary psychiatric hospitalization on or before October 17, 2011, before plaintiff was ever spoken to by Sgt. Ouillette or Lt. Labrie. (Ex. 3, Ex. 31, PSOF, ¶ 40). Sgt. Ouillette filled out a pink slip he intended to file before ever speaking with plaintiff and Lt. Labrie filled out the application for temporary involuntary hospitalization pursuant to M.G.L. ch. 123 § 12(a) before plaintiff arrived at approximately 9:00 p.m. on October 18, 2011. (Ex. 8, PSOF, ¶ 40). In this regard, defendants cannot sustain their burden of proof that there is no genuine material fact whether defendants in good faith complied with M.G.L.A. c. 123 and whether under all the circumstances defendants' had a good faith belief based upon reasonable grounds that the measures they took were necessary. (see, *Maiorana v. MacDonald*, 596 F.2d 1072, 1074 (1st Cir. 1979).

Plaintiff claims constitutional liberty, privacy and due process violations under the 1st, 4th and 14th Amendments by defendants where uniquely, M.G.L.A. c. 123 et seq., provides no adequate state remedy to redress liberty and property violations inflicted by state officials which raises a genuine issue of material fact whether defendants' conduct violated plaintiff's due process rights and equal protection rights under the 14th Amendment and therefore warrants denial of defendants' motion. (see, *Parrett v. Taylor*, 451n U.S. 527, 542 (1981)). Plaintiff has set forth facts to demonstrate there was no probable cause to believe he was dangerous and defendants had no probable cause to believe an emergency application was needed based upon McCarthy's sole false, inconsistent and highly suspect accusations, and did not file criminal threatening charges against plaintiff allegedly involving a fellow police officer, an FBI agent and a judge. (see, *Topp v. Wolkowski,* 994 F. 2d 45, 48 (1st. Cir. 1993)(Ex. 31, Ex. 26) Ouillette's

report of October 17, 2011, without explanation references Labrie's October 18, 2011, interrogation of plaintiff. (Ex. 31) Defendants' did not contact all the names on the so called hit list. The plaintiff argues that reasonable official such as Sgt. Ouillette and Sgt. Labrie could not have believed their actions were lawful in light of clearly established law and the information the official possessed at the time of their allegedly unlawful conduct.'" *Lowinger v. Broderick*, 50 F. 3d 61, 65 (1st Cir. 1995) The information supplied by McCarthy under the circumstances was objectively untrue and unreliable and in no way constituted "circumstances warranting a reasonable belief that the person to be seized does (as outlined in the statute) has a mental health condition threatening serious harm to himself or others." *Ahern v. O'Donnell*, 109 F.3d 809, 817 (1st Cir. 1997). *Ahern* (supra.) involved threatening calls that were verified as made to an ex-girlfriend and new boyfriend and a prior history of mental health treatment and he agreed to submit to an evaluation as an employee of the University of Massachusetts Boston Police, which stands in contrast to the case at bar where the plaintiff in no way voluntarily agreed to submit to an involuntary mental health evaluation. (Ex. 26) Plaintiff emphatically challenges defendants' assertion that once he was transported to Milford Hospital, he was immediately evaluated by Riverside Community Care in the Emergency Room, it was found that he was "anxious, paranoid, suspicious and delusional" and he was admitted to Pembroke Hospital for further evaluation. (DSOF, ¶ ¶ 58, 60). Plaintiff was first seen by a nurse at Milford Hospital and then Riverside well after two hours had expired. (Ex. 26)

Plaintiff argues that the mental health commitment statue and courts strongly mandate and compel judicial supervision of all involuntary mental health commitments wherever and whenever possible. (Ex. 28) Here, there are genuine issues of material fact as to whether Sgt.

Ouillette and Lt. Labrie had no probable cause to believe that plaintiff had an emergency mental health condition was threatening serious harm to others at the time he was seized and whether M.G,L.A. c.123 was otherwise not reasonably complied with compelling denial of defendants' motion. (PSOF ¶¶ 12, 13, 15, 31, 36, 37, 40, 43, 44, 48, 49)

    c. **The Defendant Police Officers Are Not Immune From All of State Tort Claims**.

General Laws c. 258, § 2 provides that "Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment." Plaintiff made adequate presentment under M.G.L.A. c.258 s. 4 upon defendants and they failed to answer by certified mail within the six (6) month statutory time period as required. (Ex. 29) Defendants have set forth no facts or case law to support their contention they have demonstrated that there exists no genuine issue of material fact with respect to plaintiff's well pleaded tort claims. (Ex. 1) Plaintiff claims the acts complained of by state actors were ministerial functions and subject to a strict set of standards and rules and not subject to the discretionary function exception under M.G.L.A. c.258 §10(b). (see, *Alake v. City of Boston,* 40 Mas. App. Ct. 610, 618 (1996)). Plaintiff additionally contends that they were responsible for the injury causing condition that resulted in harm to plaintiff which creates a genuine issue of material fact concerning liability under the M.G.L.A. c. 258 §10(j). Defendants' conclusory contention that they enjoy qualified immunity from plaintiff's tort claims does not satisfy their burden under Fed. R. Civ. P. Rule 56.

**Gross negligence:** Plaintiff claims liability based on gross negligence or conscious indifference to his rights that involved no application of professional judgment at all. (see, *Hopper v. Callahan, Jr.*, 408 Mass. 621, (1990), quoting, *Estate of Conners v. O'Connor*, 846 F.2d 1205, 1208 (9th Cir. 1988), cert. denied, 489 U.S. 1065 (1989). **Misrepresentation:** Plaintiff claims defendants' materially misrepresented material facts to medical personal knowing that such misrepresentations would be relied upon and would cause plaintiff to suffer injury and a deprivation of constitutionally protected rights. (Ex. 31) **Civil conspiracy:** Plaintiff's claims include a conspiracy claim under § 1983, and plaintiff set forth sufficiently reliable and admissible evidence that defendants are persons and entities acting under color of state law who conspired to deprive him of a federally protected right. (see, *Marchese v. Umstead*, 110 F.Supp.2d 361, 371 (E.D. Pa. 2000)) Defendant's Ouillette and Lt. Labrie conspired to deprive plaintiff of his 1st, 4th, 5th and 14th Amendment rights to privacy, against unreasonable seizures and excessive force, rights to remain silent, due process and equal protection of rights. **Abuse of process:** Plaintiff contends that defendants would only be permitted to restrain plaintiff and apply for hospitalization under §12(a) if they were in compliance with MGLA c.123 §12 and applicable regulations, which is greatly contested and Northbridge Police Department participated the wrongdoing of a successful use of a lawful process for an improper purpose, which is an essential element of the tort of abuse of process. (see, *Sullivan v. Choquette*, 289 F. Supp. 780 (D. Mass. 1968), *Alvarez-Castro v. Negron*, 475 F. Supp.2d 147 (D.P.R. 2007). Plaintiff claims he was detained under the mental health statute as an ulterior motive to effectuating his arrest for threats which could not be achieved where no probable cause existed. (see, *Lefrenier v. Kinirey,* 478 F. Supp. 2d 126 (D. Mass. 2007). **False imprisonment and Battery:** Defendants intentionally, recklessly and unlawfully restrained plaintiff's rights to

liberty and caused an unconsented touching in an involuntary psychiatric medical setting which constitute the torts of false imprisonment and battery under the circumstances. **Negligent infliction of emotional distress and intentional infliction of emotional distress:** To maintain a claim for intentional infliction of emotional distress, a plaintiff must establish that a defendant: (1) intended to inflict emotional distress by (2) undertaking actions that were extreme and outrageous, thereby (3) causing emotional distress to the plaintiff, which (4) was severe so that no reasonable person could be expected to endure it. See *Young v. Wells Fargo Bank*, NA, 717 F.3d 224, 240 (1st Cir. 2013) Plaintiff contends that defendants' actions and inactions taken against him, accepted as true, a reasonable person would have suffered emotional distress under the circumstances of the case. *Sullivan v. Boston Gas Co.,* 414 Mass. 129, 132 (1993) The facts and allegations surrounding defendants' unlawful emergency mental health involuntary commitment application of plaintiff are sufficiently outrageous to permit this claim to proceed to trial. (see, *Guckenberger v. Boston Univ*., 957 F. Supp. 306, 318 (D. Mass. 1997) (in determining whether conduct is "extreme and outrageous," an important consideration is the relationshp of the parties, and the defendant's knowledge of the plaintiff's sensitivities).

**d. Defendant Police Officers Are Not Entitled to Qualified Immunity for Claims Brought Pursuant to the Massachusetts Civil Rights Act**

Contrary to defendants' unsupported conclusions, the defendant police officers are not entitled to qualified immunity in regard to plaintiff's § 1983 claims, or his claims under MCRA. (see*, Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 595, 747 N.E.2d 729, 746 (2001) Plaintiff brought claims under M.G.L.A. c.12 §11, the Massachusetts Civil Rights Act (MCRA) citing alleged violations of his First, Fourth, Fifth, and Fourteenth Amendment rights under the United States Constitution and rights under the Massachusetts Constitution. (Ex. 1 ¶87-88)

MCRA provides a remedy in the form of a civil action, [w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the Commonwealth..." M.G.L.A. c. 12, §11H. Plaintiff's claims against defendants' interfered with plaintiff's privacy rights, rights against unreasonable searches and seizure's of one's person, Miranda rights, confrontation rights, due process rights and rights to equal protection under the laws under the 1st, 4th, 5th, 6th and 14th Amendments by means of threatening his involuntary mental health admission and attempting coerce and intimidate plaintiff to agree to facts as described by McCarthy and to undergo a mental health evaluation based upon those knowingly false and inaccurate facts. In the context of the MCRA, a "threat" consists of "the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." (se, *Planned Parenthood League of Mass., Inc. v. Blake*, 417 Mass. 467, 474 (1994). Defendants' conclusory contention that they enjoy qualified immunity from plaintiff's alleged violations under M.G.L.A. c. 12 §11, without more does not satisfy their burden under Fed. R. Civ. P. Rule 56, and their motion must be denied.

### e. The Town of Northbridge and Chief Warhol Established an Unconstitutional Custom, Practice or Policy Regarding the Use of Emergency Mental Health Evaluations

Plaintiff has set forth material facts to establish municipal liability under § 1983, where plaintiff's harm was caused by a constitutional violation, and that the Town of Northbridge is responsible for that violation, in connection with an unconstitutional custom, policy and/or practice of defendants. (Count IV) Plaintiff avers 1) the alleged municipal action at issue constituted a 'policy or custom' attributable to the Town, and, 2) the municipal policy or custom

actually caused plaintiff's injury; and 3) "the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as 'deliberate indifference.'" (se, *Young v. City of Providence*, 404 F.3d 4, 25-26 (1st Cir. 2005)). Plaintiff has set forth material facts to support his *Monell* claim in that Northbridge had an unconstitutional policy or custom concerning their legal authority with respect to emergency involuntary mental health commitments under M.G.L.A. c.123 s. 12, and the policy or actions was the moving force behind alleged constitutional violations by Defendant Warchol and Northbridge Police Department tolerating and acquiescing to individual defendants' conduct. (Count III) (see, *Bibbo v. Mulhern,* 621 F.Supp. 1018, 1027 (D. Mass. 1985), see, *Britton v. Maloney,* 901 F. Supp. 444, 450 (D. Mass. 1995), see also, *Otero v. Wood* 216 F. Supp. 2d 612, 627 (S.D. Ohio 2004) (municipality may ……ratify it's employees acts,… by failing to investigate alleged constitutional violations which is evidence of condoning the conduct) It's undisputed that Defendant Town of Northbridge Police Department had an emergency mental health policy and procedure identical with the requirements of M.G.L.A. c. 123 and relevant regulations. (Ex. 18 p. 7 ln. 20, 19 p. 6 ln. 14-15)

Defendants possessed the requisite level of fault where the requirement of an actual mental health emergency at the time is a legal condition precedent to a good faith emergency application by a police officer under M.G.L.A. c.123 §12 et seq., and non -compliance with this statutory mandate directly caused the deprivation of plaintiff's constitutional rights and the consequential harm and injuries suffered. Plaintiff contends permitting officers to fill out emergency mental health applications before an individual is questioned and when there is no probable cause that a mental health emergency exists. (see, *DiRico v. City of Quincy*, 404 F.3d 464, 468-469 (1st Cir. 2005)). Plaintiff contends that the Town of Northbridge is liable to

plaintiff under 42 U.S.C. §1983 for the implementation and/or execution of their emergency involuntary mental health commitment policy, statement, ordinance, regulation, or decision officially adopted and promulgated which amounts to deliberate indifference to plaintiff's constitutionally protected rights and depriving plaintiff of statutory and clearly established constitutional protections and compels denial of defendants' motion.

**f. Defendant Chief Walter Warchol Does Not Enjoy Qualified Immunity In This Case.**

Chief Warchol is not qualified immune because he is responsible to supervise all emergency mental health applications for psychiatric hospitalization under M.G.L.A. c. 123, and failed to identify and take action with regard to defendants' deliberate indifference to plaintiff's clearly established rights in this case. (Ex. 19 ln 6-7) "Qualified immunity does not protect Chief Warchol, a supervisory official, from liability in this case because there is a genuine issue of material fact whether he could reasonably anticipate liability from lack of strict adherence to the emergency provisions of M.G.L.A. c.123 §12. (see, *Camilo-Robles v. Hoyos*, 151 F.3d 1, 6 (1st Cir. 1998) An important factor in finding immunity generally, is the private entity's relationship to the public defendant. (see, *Fresenius Med. Care Cardiovascular Res., Inc. v. P.R. & Caribbean Cardiovascular Ctr. Corp*., 322 F.3d 56, 67-68 (1st Cir. 2003). Here, the police chief and defendant officers' relationship to plaintiff was one of the duty to protect and deliberate indifference to his constitutional and statutory rights, given defendants objective conduct of deeming him as mentally unstable based entirely upon an unreliable third party with a substantial criminal record and the subject of an arson investigation commenced the same day. Indeed, Defendant McCarthy is currently in Essex Superior Court seeking to recover insurance proceeds on the buildings that burned. (Ex. 27)

**g. Plaintiff was Discriminated Against on Account of His Perceived Mental Disability in Violation of the Americans With Disabilities Act.**

To establish a prima facie case under the provisions of 42 U.S.C. § 12131 of the Americans With Disabilities Act, (ADA) the plaintiff is required to show that 1) he is a qualified individual with disabilities; 2) he was either excluded from participation in or denied the benefits of some public entity's services, programs or activities or was otherwise discriminated against; and 3) that such exclusion, denial of benefits or discrimination was by reason of the disability. (see, *Panzardi-Santiago v. Universidad of P.R.,* 200 F. Supp. 2d 1, 15 (D. Puerto Rico 2002), citing *Parker v. Universidad de Puerto Rico,* 225 F. 3d 1, 5, (2000). There is a genuine issue of material fact whether plaintiff was a qualified handicapped individual who was discriminated against because of his disability and not afforded the benefits of a public entities [Northbridge Police Department] programs and activities with regard to protecting persons wrongfully accused of emergency mental illness which compels the denial of defendant's motion with regard to plaintiff's ADA Count. (Count II)

Title II, states in relevant part that: Subject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. (42 U.S.C.S. § 12132(2)). Plaintiff had a "disability" within the meaning of the Act and was discriminated against, retaliated against, treated unfairly and differently because of defendants' perceived mental disability of plaintiff. (see, 42 U.S.C. §12102(2)(c), see, *Alvarado v. Donahue*, 687 F.3d 483 (1st Cir. 2012)) Prior to plaintiff's Milford Hospital admission while in police custody on October 18, 2011, he was a qualified disabled

individual in that he was perceived by defendants to be mentally disabled, and was, "regarded as" impaired by defendants where the statute was intended to protect individuals from society's myths and fears about mental disabilities and was he entitled to receive and was denied the protections of the public mental health commitment statute, programs and facilities, including judicial supervision over any non-emergency involuntary mental health commitment applications in violation of his rights under the ADA. Plaintiff argues disparate treatment of the failure to afford plaintiff his rights to requested immediate judicial review the next business day upon request and allegation of abuse of the statute by another. (see, 42 U.S.C. §12102(2)(c)). Sgt. Ouillette testified at deposition in April 2016, that he "regarded plaintiff as disabled" on October 17-18, 2011, creating a genuine issue of material fact whether defendants' conduct in total violated plaintiff's rights under the ADA and compelling the denial of defendants' motion for summary judgment on this issue. (Ex. 17 p. 34)

Plaintiff avers that the Defendant Police Officers discriminated against him based on his perceived mental disability with deliberate indifference to his rights and denied him required statutory protections of the public mental health statute by ordering an emergency involuntary mental health commitment and evaluation in a clear non-emergent situation, based upon objectively false facts and uncorroborated hearsay from an unreliable and biased witness and non-family member in violation of Title II of the ADA, M.G.L.A. c. 123 §12 et seq., and applicable regulations. (see, 104 C.M.R. 27.00 et seq., see, Ex. 28)

**h.  Plaintiff's Claims For Violations of Article 12 and Article 14 of the Massachusetts Declaration of Rights Are Not Subject to Summary Judgment.**

Plaintiff has established the existence of a genuine issue of material fact that plaintiff's rights to be free from coerced criminal interrogation, liberty and privacy were violated by defendants on October 18, 2011 through October 24, 2011. (Ex. 5) Plaintiff has established the existence of a genuine issue of material fact that plaintiff's rights to be free from unlawful search and seizure, unlawful arrest, excessive force and false imprisonment and/or an unconstitutional restraint on his constitutionally protected liberty rights and his civil rights as an alleged criminally accused mental health patient, under Articles 12 and Article 14 of the Massachusetts Declaration of Rights. (Ex. 1 Count 10).

Moreover. Plaintiff's arrest and first notification of criminal charges against him by defendants on October 22, 2011, when plaintiff appeared at the Northbridge police station to retrieve his truck left there does not affect the genuine issue of material fact whether plaintiff's rights to privacy, liberty, counsel, to remain silent when criminal jeopardy attaches, the right to confrontation, due process rights and equal protection rights were violated on and before that date by defendants and their motion warrants denial. (see, *Brady v. Dill*, 187 F.3d 104, 113 (1st Cir. 1999) (Ex. 16, Ex. 24 p. 95 ln, 8-25, p. 96 ln. 5)(PSOF, ¶¶ 63, 66).

i.  **Defendants Violation of Plaintiff's Statutory Privacy Rights Under M.G.L.A. c. 214 s. 1B**

Plaintiff claims defendants' conduct in total constituted an unconscionable and unreasonably offensive intrusion into and interference with plaintiff's personal autonomy rights and rights against disclosure of private medical information to third parties. (see, *Albright v. Morton*, 321 F. Supp. 2d 130, 140 (D. Mass. 2004) Defendants' disclosed private medical information such as Kunz being medically unstable to Defendant Kevin McCarthy, the FBI, and Fire Department EMT's. (PSOF, ¶ 71, Ex. 5).

## V. Conclusion:

For the foregoing reasons and the reasons set forth in the Exhibits 1-32, presented plaintiff asks this court to deny defendants' motion for summary judgment and let plaintiff's important and genuine issues of fact and law to fairly proceed to a trial on the merits.

REQUEST FOR HEARING

                                      Respectfully submitted,
                                      Plaintiff Kai Kunz,
                                      By his attorney,

                                      /s/ David Ashworth

                                      _____
                                      David E. Ashworth, Esq.
                                      11 Pleasant Street
                                      Worcester, MA 01609
                                      (508) 753 9199
                                      BBO# 549850

## CERTIFICATE OF SERVICE

I, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants as listed below this 13th day of July, 2016.

                                        /s/ David Ashworth
                                        _____
                                        David E. Ashworth, Esq.

| | |
|---|---|
| Scott F. Gleason, Esq. | Bradford N. Louison, Esq. (BBO#305755) |
| Gleason Law Offices, P.C. | blouison@lccplaw.com |
| 163 Merrimack Street | Alexandra R. Hassell, Esq. (BBO #694480) |
| Haverhill, MA 01830 | ahassell@lccplaw.com |
| | Louison, Costello, Condon & Pfaff, LLP |
| | 101 Summer Street |
| | Boston, MA 02110 |