UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 4:14-CV-13894TSH

KAI KUNZ,                                    )
    Plaintiff,                            )
                                     )
v.                                           )
                                     )
TOWN OF NORTHBRIDGE, ET AL.,                 )
    Defendants,                           )

**PLAINTIFF, KIA KUNZ'S FINAL PRE-TRIAL CONFERENCE MEMORANDUM**

Plaintiff Kai Kunz, hereby submits this Final Pretrial Conference Memorandum pursuant to the Court's Procedural Order Re: Final Pretrial Conference/Trial. [Doc. 89]

## 1) A Concise Summary of the Evidence that will be Offered by the Defendants and the Plaintiff

With Respect to both Liability and Damages (including special damages, if any) Defendants' Anticipated Evidence with Respect to Liability the Defendants will offer evidence in the form of testimony and exhibits to show that the Plaintiff, Kai Kunz, was transported to Milford Hospital for a psychiatric evaluation pursuant to the requirements of G.L. c. 123, § 12(a). The evidence will establish that the officers had reason to believe that failure to hospitalize Kai Kunz would have created a likelihood of serious harm by reason of mental illness and applied for his involuntary hospitalization in good faith. As such, the Defendants lacked the intent element required for Plaintiff's claims of abuse of process, malicious prosecution and intentional infliction of emotional distress. Further, Plaintiff's contention that the Defendants violated the Americans with Disabilities Act due to their "failure" to ascertain whether a physician was available to evaluate him prior to his transportation to Milford Hospital is without merit, as this was an emergency situation. Defendants' Anticipated Evidence with Respect to Damages the Defendants submit that based on the fact that liability cannot be established by the Plaintiff, there will be no damages.

Plaintiff's Anticipated Evidence with Respect to both Liability and Damages and Special Damages, the Plaintiff will offer evidence in the form of testimony and exhibits to show that plaintiff was a 10 year resident of Northbridge, Massachusetts who was involved in real estate development, and other business ventures. Ironically at one point, plaintiff rented office space to the Town, and had certain prior police, planning, building and tax disagreements with the Town, primarily over curbing, drainage, parking and his residency at 111 Church Street. Plaintiff had sought police investigation and action against certain persons from 2007 through 2011, who he believed were misappropriating rental payments from his real estate business and/or threatening him and his business partner. In 2009, plaintiff filed an internal affairs investigation against Ouillette for failure to investigate his claims and review or/return evidence. Plaintiff was instructed to file civil claims against those involved and he did in May 2011.

On October 17, 2011, plaintiff was called by Ouillette who left a message to arrange a time to meet him at the station. On that day, Ouillette wrote a report based upon a completely false report to him by Kevin McCarthy, that plaintiff had drafted a "hit list" and intended to murder all persons on it. On October 17, 2011, drafted and executed an application for an emergency mental health evaluation and a criminal complaint against plaintiff for threatening to commit a crime. Plaintiff alleges there was no probable cause to believe plaintiff had committed threats and the criminal complaint based upon the report of Ouillette was not filed in Uxbridge District Court. Plaintiff alleges there is no hit list or written threats of an intent to commit murder. On October 18, 2011, Officer Woeller called plaintiff and instructed him to meet at the Northbridge Police Station on October 18, 2011, at 8:30 p.m., and he arrived at approximately 8:45 p.m. Plaintiff was interviewed by Defendants' Petrinelli and Labrie at approximately 9:00 p.m., and plaintiff asked that the interview be taped and he was told it would be. Plaintiff showed copies of lawsuits filed to LaBrie and Petrinelli. LaBrie executed an application pursuant to §12(a) for plaintiff's involuntary hospitalization at 8:30 p.m. Plaintiff was transported by the Northbridge Fire Department to MRMC and admitted there at approximately 10:23 p.m.

Plaintiff alleges the defendants were malicious, deliberately indifferent to plaintiff's rights, retaliatory and acted in bad faith restraining plaintiff on October 18, 2011, at approximately 8:30 p.m., and transporting him to MRMC emergency room via Northbridge Fire Department, under physical restraints. MRMC is not a licensed mental health facility in Massachusetts. No police officer escorted or followed plaintiff to MRMC. Plaintiff alleges that there was no mental health emergency on October 18, 2011, which would afford defendants' the right to seize

plaintiff's person. Plaintiff avers that defendants' conduct violated his rights under the Americans with Disabilities Act, and constitutes the torts of abuse of process, malicious prosecution and intentional infliction of emotional distress. Plaintiff has suffered foreseeable emotional distress, business damages, stigma and special damages as a result of defendants' unlawful conduct.

## 2) Statement of Facts Established by the Pleadings, by Admissions or by Stipulations

## Defendants' Proposed Stipulated Facts

1) The Town of Northbridge is a municipality that is duly organized under the laws of the Commonwealth of Massachusetts.

2) Defendant Walter Warchol is the Chief of Police for the Defendant Town of Northbridge.

3) Defendant Sgt. John Ouillette is a member of the Northbridge Police Department.

4) Defendant Sgt. Timothy LaBrie is a member of the Northbridge Police Department.

5) Defendant Sgt. Brian Petrinelli is a member of the Northbridge Police Department.

6) Plaintiff, Kai Kunz, and Kevin McCarthy were involved in a business dispute in October of 2011.

7) The Plaintiff has had previous interactions with members of the Northbridge Police Department.

8) On October 17, 2017, Sgt. Ouillette spoke to the Plaintiff on the telephone and asked him to come to the Northbridge Police Department.

9) On October 18, 2011 at approximately 8:30 p.m., Kunz arrived at the Northbridge Police Station to speak with Lt. Timothy LaBrie and Sgt. Brian Petrinelli.

10) The Plaintiff was not charged with any crime stemming from this matter by the Northbridge Defendants.

11) Sgt. Ouillette and Lt. LaBrie each filed an Application for And Authorization of Temporary Involuntary Hospitalization pursuant to M.G.L c. 123, §§ 12(a)-(b) regarding the Plaintiff, dated October 17, 2011 and October 18, 2011, respectively.

12) The Plaintiff was transported by ambulance from the Northbridge Police Department to Milford Hospital by John Sheridan and Robert LaChapelle, members of the Northbridge Fire Department.

13) The Plaintiff was evaluated by Riverside Community Care at Milford Hospital.

14) On October 19, 2011, the Plaintiff was transferred from Milford Hospital to Pembroke Hospital.

15) On October 19, 2011, the Haverhill Police Department issued a warrant for the Plaintiff's arrest for Assault to Murder pursuant to G.L. c. 265, § 15.

16) On October 21, 2011, the Plaintiff was discharged from Pembroke Hospital.

17) On October 22, 2011, the Plaintiff was arrested by Det. Woeller pursuant to the warrant issued by the Haverhill Police Department.

18) The Northbridge Police Department turned the Plaintiff over to the Haverhill Department after his arrest for Assault to Murder.


## 2. Plaintiff's Proposed Stipulated Facts:

1) On October 17, 2017, Sgt. Ouillette left a message for plaintiff by cellphone and asked him to come to the Northbridge Police Department.

2) On October 17, 2011, Officer Woeller called plaintiff and instructed him to come to the Northbridge Police Station at 8:30, on October 18, 2011.

3) Plaintiff arrived at the Northbridge Police Station and at 9:00 p.m., he was interviewed by Lt. Timothy LaBrie and Sgt. Brian Petrinelli.

4)  The Plaintiff was charged with a crime of assault and battery upon Kevin McCarthy, the person who had falsely accused plaintiff of being homicidal and the case was terminated in plaintiff's favor in Haverhill District Court, in January 2013, stemming from this matter reported by McCarthy to the Northbridge Defendants. Plaintiff was not charged with threats to commit a crime on October 17, 2011, by Northbridge Police although an application for criminal complaint and report was drafted and signed by Ouillette, but never filed.

5) On October 22, 2011, the Plaintiff was discharged from Pembroke Hospital.

6)  A physician is available each day in District Courts across the Commonwealth including Worcester District Court and/or Milford District Court on October 17, 2011 to October 19, 2011.

7)  Defendants Ouillette and Labrie regarded plaintiff as disabled under the Americans with Disabilities Act, and Northbridge Officer Dejordy spoke to McCarthy on October 17, 2011.

### 3) Contested Issues of Fact:

1) What occurred, what was said between Kai Kunz and Kevin McCarthy on October 16, 2011 and whether threats were made by Kai Kunz against others.

2) Whether the list of names supplied to Sgt. Ouillette by Kevin McCarthy was a "hit list" compiled by Kai Kunz.

3) What occurred, what was said and the condition of the Plaintiff during his interactions with Sgt. Ouillette, Lt. Timothy LaBrie and Sgt. Brian Petrinelli on October 17, 2011 and October 18, 2011 prior to the Plaintiff's transportation to Milford Hospital for a psychiatric evaluation.

4)  Whether the Plaintiff was placed in handcuffs at any time while he was at the Northbridge Police Department on October 18, 2011.

5) Whether the Plaintiff's mental state created an emergency situation as required for an application for involuntary hospitalization by a police officer pursuant to G.L. c. 123, § 12(a).

6) Whether Lt. Labrie and Sgt. Petrinelli were required to ascertain whether a

physician, qualified psychologist, qualified psychiatric nurse, mental health clinical specialist or licensed independent clinical social worker was available to evaluate the Plaintiff's mental status at the Northbridge Police Department prior to making the decision to have the Northbridge Fire Department transport him to Milford Hospital for a psychiatric evaluation in order to comply with G.L. c. 123, § 12(a).

7) Whether the Defendant Officers made the decision to apply for the involuntary hospitalization of Kai Kunz in good faith.

8) What occurred, what was said and the condition of the Plaintiff during his transportation from the Northbridge Police Department to Milford Hospital by John Sheridan and Robert LaChappel, members of the Northbridge Fire Department.

9) What amount would fairly compensate the Plaintiff for his alleged damages.

## 3. Plaintiff's Contested Facts:

1)  Plaintiff did not voluntarily agree to be evaluated at MRMC under M.G.L.A. c. 123, on October 18, 2011, at 8:45 p.m., or at any time.

2)  Plaintiff's home at 111 Church Street, Northbridge, MA was searched without a warrant on or about October 18, 2011, by Northbridge Police Officers.

3)  Plaintiff alleges that on October 17, 2011, Ouillette drove to meet with Kunz's former business partner and property owner, Michael Simmons, to try to challenge Kunz's legal residency at 111 Church Street.

4)  Plaintiff does not take medications and did not agree to go to the hospital to "adjust his medications", as reported by LaBrie .

5)  Plaintiff was caused to be detained no less than 4 days, and he was never permitted to see a judge or licensed psychiatrist or designated physician until October 19, 2011, at 1:30 p.m.

6)  Plaintiff claims Dr. Negus never examined him in any formal or informal way on October 19, 2011, before he diagnosed him with "delusional disorder" and filled out an application for an authorization of temporary involuntary hospitalization and authorization for transfer to Pembroke. (Doc. 72)

7)  Plaintiff contends Dr. Connelly, M.D. at MRMC Emergency Department did not perform a full physical exam of plaintiff. Dr. Connolly at MRMC noted that he reviewed the nursing records and agreed with them.  See Ex. Milford Regional medical records, page 000001 "Past Medical History: Notes." Dr. Connelly reported that plaintiff had made written threats to kill. Dr. Connolly noted in the record that he took the patient's history from Mr. Kunz and the police. (see, Milford Regional medical records, p. 0001, "HPI Psychiatric, Notes, Historian" Plaintiff denies this. The police did not escort plaintiff to the hospital.

8)  The Northbridge Police did not have probable cause in good faith believe plaintiff was homicidal or a danger to self or others on October 18, 2011.

9)  The Northbridge Police knew for two to three days that they were going to apply for an emergency application for involuntary psychiatric hospitalization under M.G.L.A. c. 123 s. 12(a), and failed to determine the reliability of Kevin McCarthy under the circumstances.

10)  Certain gas containers observed in Kunz's truck parked at the Northbridge Police Station, McCarthy's report of a purported "hit list", the original of which has not been produced, did not create probable cause to restrain plaintiff subject to an emergency mental health evaluation upon request of police, where no physician was available on October 18, 2011, at 8:30 p.m. under M.G.L.A. c. 123 s. 12(a).

11)  Plaintiff contends defendants initiated process against him on October 18, 2011, knowing plaintiff would be charged with a crime stemming from this matter by the Northbridge Defendants, in Haverhill District Court, which he was on October 19, 2011.

12)  Defendants intentionally used force against Plaintiff and the force Defendants used was unreasonable.

13)  The Northbridge Police Report and "pink sheet" which accompanied plaintiff to MRMC, signed by Sgt. Labrie at 8:45 p.m., seemed to indicate Mr. Kunz was a voluntary mental health patient at MRMC on October 18, 2011, a fact which is materially false.

14)  MRMC argues without reference to any of their specific duties or responsibilities in connection with their licensure, that they were not a facility under, 104 C.M.R. §25.03, and therefore not subject to any statutory requirements of M.G.L.A. c.123 §§1-12.

15)  Plaintiff claims police defendants abused and misused the mental health admission procedures and conspired with MRMC, by tacit agreement and were willfully and deliberately indifferent to his clearly established statutory constitutional liberty, privacy and due process rights as well as statutory patient rights.

16)  Plaintiff claims that Defendants Riverside, MRMC and Pembroke Hospital corrected and/or attempted to correct their misdiagnosis and miscoding of plaintiff's original diagnosis of Alzheimer's Disease, by a series of letters to plaintiff from Riverside Quality Management and Pembroke Hospital during 2013-2014. Plaintiff also sought to correct the medical records of MRMC and other defendants, that one basis for concluding that he should be admitted for mental health evaluation is that he had Alzheimer Disease, a history of mental health psychiatric admissions and, agreed that evening to be evaluated and have his medications adjusted, as recorded and stated by Northbridge Police and MRMC agents and employees. On March 4, 2014, Elizabeth Berte, of Riverside wrote to plaintiff to indicate that after a thorough review of his chart Autism Spectrum Disorder was ruled out and there was no mention of Alzheimer's disease, on his record, facts which plaintiff claims are material and in great dispute. On April 7, 2014, Ellen M. Leahy, Assistant Director of Quality Management, wrote to plaintiff to state that Riverside had incorrectly coded plaintiff as having Alzheimer's disease, and should have been coded as (Code No. 299.0) for Autism Spectrum Disorder, and it was represented that a correction was made in his private record.

17)  Mentally ill people are not more dangerous than mentally well persons and occupy a no-man's land between civil and criminal law where important rights against self-incrimination, unlawful arrest/confinement, and forced mental health treatment, are unexplainably waived and/or inapplicable to the constitutional deprivation of the involuntary committed patient under s.12(a).

18)  Massachusetts Regulations 104 C.M.R. §27.08(6), provides in part that [i]n no event shall an order of commitment for observation pursuant to M.G.L. c. 123, §12 be issued in order to transfer a patient in lieu of compliance with the requirements of M.G.L. c.123 §3 or 104 CMR §27.08. Under 104 C.M.R. §27.08 (7) the [t]ransfer of a patient committed pursuant to M.G.L. c. 123, §12 shall not extend the period of such hospitalization.

19)  The likelihood of serious harm is "objective medical indicia of dangerousness" under M.G.L.A. c. 123 §1 which defines this as "imminently dangerous mentally ill persons in emergent situations".

## 4) Jurisdictional Questions

There are no jurisdictional questions.

## 5) Questions Raised by Pending Motions

There are no pending motions as of this date.

## 6) Issues of Law, including Evidentiary questions, together with supporting authority

The parties are separately submitting proposed jury instructions. Deciding how to charge the jury may require the Court to resolve disputes about what constitutes compliance with G.L. c. 123, § 12(a). More specifically, 1) whether police officers are required to ascertain whether a physician, qualified psychologist, qualified psychiatric nurse, mental health clinical specialist or licensed independent clinical social worker was available to evaluate the Plaintiff's mental status prior to applying for involuntary hospitalization of the Plaintiff in an emergency situation and (2) what constitutes "not available" for the purpose of an application for involuntary hospitalization made by a police officer in an emergency situation. The parties are separately submitting their respective motions in limine regarding evidentiary matters.

## 6. Plaintiff's Issues of Law, including Evidentiary questions, together with supporting authority:

**ADA**: Title II of the ADA provides generally that no qualified individual with a disability shall be by reason of such disability be excluded from participation in or be denied the benefit of services, programs, and activities of a public entity or be subjected to discrimination by any such entity. (see 42 U.S.C. §12132) Plaintiff will show that 1) he is a qualified individual with disabilities; 2) he was either excluded from participation in or denied the benefits of some public entity's services, programs or activities or was otherwise discriminated against; and 3) that such exclusion, denial of benefits or discrimination was by reason of the disability. (see, *Panzardi-Santiago v. Universidad of P.R.,* 200 F. Supp. 2d 1, 15 (D. Puerto

Rico 2002), An individual meets the requirement of "being regarded as having such an impairment" if the individual "establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. §12102(3)(A). Defendants perceived and or regarded plaintiff as disabled on October 18, 2011, and he was a qualified individual with a disability. (see, 42 U.S.C. §12102(3)(A)). Title II Part 35 Nondiscrimination on the Basis of Disability in State and Local Government Services, § 35.134 Retaliation or coercion, provides that:

> (a) No private or public entity shall discriminate against any individual because that individual has opposed any act or practice made unlawful by this part, or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.

> (b) No private or public entity shall coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the Act or this part.

One issue is whether the police defendants' failure to determine the availability of a psychiatrist or ascertain the unavailability of a psychiatrist from October 16, 2011 to October 18, 2011, violated plaintiff's rights under the ADA? Another issue is whether plaintiff's seizure under the circumstances constitutes a violation and/or retaliation under the ADA? Plaintiff was denied benefits of the public entity such as a right to refuse treatment, the right to petition the court, the right to CPCS counsel and an immediate judicial hearing on October 19, 2011, after requesting that he be granted this required public benefit on more than one occasion that evening and the next day Plaintiff claims MRMC violated anti-discrimination and retaliation laws when these rights and benefits were denied in retaliation for the exercise of his lawful rights and carried with a discriminatory purpose because they perceived plaintiff to be suffering from an intellectual disability.

**Abuse of Process:** The elements of an abuse of process claim are (1) the defendant used "process" (2) for an ulterior or illegitimate purpose (3) resulting in damage. *Millennium Equity Holdings, LLC v. Mahlowitz,* 456 Mass. 627, 636 (2010), see also, *Boyle v. Barnstable Police Department*, 818 F. Supp.2d 284

(2011) (claim of abuse of process requires participation in a judicial proceeding). Plaintiff alleges the police defendants unlawfully employed the provisions of M.G.L.A. c.123 §12(a), without determining the availability of a physician, in an objectively non-emergency situation which constitutionally requires medical assessments be made before one's liberty is restrained. Plaintiff contends Defendants initiated this legal process for the ulterior motive of detaining plaintiff, without probable cause, until an arrest warrant could be secured by Haverhill Police and for the ulterior motive of punishing plaintiff because of personal bias against him by police defendants.

The Defendants argue that M.G.L.A. c. 123 §12 should not be read to require police officers to exhaust the availability of medical professionals prior to making the application. (Doc. 82 p. 5) Plaintiff argues this is the maintenance of an unconstitutional custom and policy and plaintiff seeks prospective injunctive relief to direct the future conduct of officials. This infringement upon personal liberty outweighs any alleged unreasonable burden on police officers as reflected in the legislative intent and the plain reading of the statute designed to protect plaintiff's constitutional liberty and privacy rights under the 4th and 14th Amendments and permits police applications in emergency situations only where no physician is available. (see M.G.L.A. c. 123 §12(a), Category 3), see also *Ahearn v. O'Donnell*, 109 F.3d 809, 815-816 (1997). In *Ahearn*, an actual threat was made unlike the case at bar. *Ahearn v. O'Donnell*, 109 F.3d 809, 820 (1994) (voice mail threat message left) Plaintiff avers that a physician is "available" each business day in District Courts across the Commonwealth including Worcester District Court and/or Milford District Court.

**Malicious Prosecution:** Plaintiff claims that defendants instituted judicial process against him, with malice and without probable cause, and that the proceedings terminated in his favor." *Goddard v. Kelley*, 629 F. Supp. 2d 115, 130 (D. Mass. 2009). The large majority of circuits hold  that malicious prosecution is actionable under 42 U.S.C. § 1983 to the extent that the defendant's actions cause the plaintiff to be unreasonably "seized" without probable cause, in violation of the Fourth Amendment. (*see Britton v. Maloney,* 196 F.3d 24, 28-29 (1st Cir.1999) (holding that "[f]or a state actor to violate the Fourth Amendment by initiating a malicious prosecution against someone, the criminal charges at issue must have imposed some deprivation of liberty consistent with the concept of a seizure" (citation omitted)); see, *Singer v. Fulton County Sheriff,* 63 F.3d 110, 116 (2d Cir.1995) (holding that "[t]he Fourth Amendment right implicated in a

malicious prosecution action is the right to be free of unreasonable seizure of the person")).

Plaintiff alleges defendants committed the related tort of false arrest where the elements of a false arrest claim are "(1) the defendant(s) intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the defendant[s] had no privilege to cause the confinement." See *Calero-Colon v. Betancourt-Lebron*, 68 F.3d 1, 3 n.6 (1st Cir. 1995) citing, *Heck v, Humphrey*, 512 U.S. at 486 n.5. ("The gravamen of that tort is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends.")

**IIED:** Plaintiff will establish at trial: (1) that the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community (3) that the actions were the cause of the plaintiff's distress; and, (4) that the emotional distress sustained by the  plaintiff was severe and of a nature that no reasonable person could be expected to endure. *Thorpe v. Mutual of Omaha Insurance Company*, 984 F.2d 541, 545 (1st Cir. 1993) (quoting *Agis v. Howard Johnson Company*, 355 N.E.2d 315, 318-319 (Mass. 1976)).

**42 U.S.C. §1983:** Although dismissed at this stage of the proceedings plaintiff moves in limine for leave to amend the complaint to coform to the evidence to state a cause of action under 42 U.S.C. §1983, and request a jury instruction on this issue where the facts and basis of the claim may be tried by the express or implied consent of the parties. (see, *Fisher v. Kadant, Inc*., 589 F.3d 505, 508 (1st Cir. 2014); see also, Fed, R. Civ. P. Rule 15(a)(2)) Involuntary psychiatric commitments are tremendous infringements on individual liberty and, in no other context may executive actors detain American citizens against their will without due process of law. (see, *O'Connor v. Donaldson*, 422 U.S. 563, 575-76 (1977)) Certainly involuntary commitments have been recognized by the courts as having a great potential for infringement on individual liberty interests and may affect persons with and without mental illness. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982); see also, *Mills v. Rogers*, 457 U.S. 291, 298-99 (1982); see also, *Kansas v. Hendricks*, 25 AM. J. L.& MED.117, 125-28 (1999) (citing *Donaldson*, 422 U.S. at 576) (stating that Court held that involuntary commitment was significant restriction on individual liberty)) The unique problem with police initiated emergency applications under M.G.L.A. c. 123 §12(a), is that involuntary commitments fundamentally and constitutionally must occur in the medical context

and therefore require a medical assessment before they restrict a person's fundamental liberty rights. To deprive an individual of liberty through involuntary commitments without medical justification are arbitrary exercises of state power. Here, plaintiff argues it is a genuine issue of material fact whether he was seized without probable cause that he was a danger to himself or others. (see *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998))

The United States Supreme Court has identified three competing factors to be weighed in determining the sufficiency of procedural safeguards accompanying deprivations caused by the state: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens. (see, *Mathews v. Eldridge*, 424 U.S. 319, 329-335 (1976); see also, *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 542 (1985)) Once a protected interest has been identified, a court must examine the process that accompanies the deprivation of that protected interest and decide whether the procedural safeguards built into the process are constitutionally adequate. (see, *Zinermon v. Burch*, 494 U.S. 113, 126 (1990)) Plaintiff argues he was treated as a defendant in a criminal prosecution or a party to a criminal proceeding, therefore he had a Fourth, Fifth, Sixth Amendment right to consult with an attorney prior to his transport to the hospital and certainly upon admission to MRMC and ultimate seizure for more than 3 days. (see, *Zhuang v. Saquet*, No. 09-12163-NMG, 2014 U.S. Dist. LEXIS 84165, at *17-18 (D. Mass. June 20, 2014))

Another issue is whether the police acted negligently in their investigation to establish probable cause required for obtaining an arrest warrant and whether the emergency M.G.L.A. c. 123 §12(a) procedures employed constitutes punishing a pre-trial before his crime. (see *Johnson v. Glick*, 481 F.2d 1028 (2nd Cir, 1988)) If complaint would lead reasonable officer to be suspicious, officer has duty to investigate further); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("A Police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be pursued especially when . . . it is unclear whether a crime had even taken place."). see *Arizona v. Youngblood*, 488 U.S. 51, 58-59 (1988), and see, *Fitzgerald v. Santoro*, 707 F.3d at 725, 732 (CA 7 2013), and, *Bruce v. Guernsey*. (CA7 2015) (unreasonable seizure where police and medical staff, hospitals and physicians… took no account of contradictory information or claims that lies caused the mental health seizure); see, *(see, Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (*1st Cir.

*2009); see, Connor B, Ex rel Vigrus v. Patrick,* 774 F.3d 45 (2014) (state DCF foster care decisions infringe on due process rights to control ones family).

Plaintiff claims in this context, the Due Process Clause imposes a duty on the state for the "safety and general well-being" of an individual when the state affirmatively "restrain[s] the individual's freedom to act on his own behalf …. through incarceration, institutionalization, or other similar restraint of personal liberty." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.,* **489 U.S. 189**, 200, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Plaintiff was deprived of his clearly established constitutional right of access to the courts under these circumstances. (see *Sittons v. Joseph*, 238 F.Supp.2d 366 (D. Mass. 2003))

**M.G.L.A. c.12 §§11H and 11I:**

Plaintiff's constitutionally protected liberty rights, privacy rights, access to the courts and due process rights under the 1st, 4th, 5th, 9th and 14th Amendments were interfered with and/or attempted to be interfered with by police defendants by means of threats, intimidation and coercion in violation of M.G.L.A. c.12 §11H and 11I. (see, *McCarthy v. Szostkiewicz*, 188 F. Supp.2d 64 (D. Mass. 2006), see also, *Nuon v. City of Lowell,* 768 F. Supp.2d 323 (D. Mass. 2011), see also, *Kentucky v. King*, 131 S, Ct. 1839 (2011) ("police created exigency", by analogy, gained access to search by means of threats of 4th Amd. violations were unauthorized by 4th Amd.)

**Prospective Injunctive Relief:** Plaintiff asks this court for a *Monell* instruction with regard to the police defendants' custom and policy employed in this case and to declare said policy unconstitutional in violation of plaintiff's 1st, 4th, and 14th Amendments to the United States Constitution and to guide future officials' conduct.

**Punitive Damages:** The jury may assess punitive damages against Defendants. The purposes of punitive damages are to punish a defendant for his conduct and to serve as an example or warning to Defendant and others not to engage in similar conduct in the future. Plaintiff must prove by a preponderance of the evidence that punitive damages should be assessed against Defendants. Punitive damages may be assessed if the jury finds that the conduct of Defendants' was in reckless disregard of plaintiff's rights. An action is in reckless disregard of

plaintiff's rights if taken with knowledge that it may violate the law.  In such extreme circumstances, not following up on the credibility and reliability of the information acted upon was gross negligence and there is objective evidence that defendants did not truly believe plaintiff was dangerous to himself or others.

## 6. Defendants' Motions in Limine

1) Defendants' Motion in Limine to Preclude Reference to any and all Claims Dismissed at the Summary Judgment Stage

2) Defendants' Motion in Limine to Preclude Reference to a Claim for Excessive Force

3) Defendants' Motion in Limine to Preclude Reference to Whether Plaintiff was Afforded his Miranda Warnings.

## 6. Plaintiff's Motions in Limine:

A. Plaintiff's Motion to Stipulate to Police Reports, Medical Records, pleadings

B. Plaintiff's Motion in Limine to Determine If the parties dispute whether the plaintiff was arrested, it may be necessary for the court to define "arrest." If the seizure at issue was not an arrest, the instruction should be modified appropriately.

C.  Plaintiff's Motion in Limine to Exclude Any "Hit List" Exhibit From Evidence Based Upon Reliability, the Best Evidence Rule and Undue Prejudice.

D.  Plaintiff's Motion in Limine For Monell Jury Instruction, *See Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "[L]iability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury." *Kelley v. LaForce,* 288 F.3d 1, 9 (1st Cir. 2002), citing *Monell,* 436 U.S. at 690-691, 98 S.Ct. 2018. See also, *Pembaur v. City of Cincinatti*, 475 U.S. 469, 481 (1986))

## 7)  Requested Amendments to the Pleadings:

The Defendants do not request any amendments to the pleadings. Plaintiff asks that amendment of the complaint be allowed by leave of court where justice so requires.

## 8)  Additional matters to aid in the disposition of the Action

The Defendants request that the remaining claim for malicious prosecution be dismissed prior to the trial of this matter. As grounds therefore, the Defendants assert that the Plaintiff has failed to satisfy the requisite elements of a claim for malicious prosecution and therefore said claim must be dismissed. "To prevail on a claim for malicious prosecution, the plaintiff must show that defendants instituted criminal proceedings against him, with malice and without probable cause, and that the proceedings terminated in his favor." Goddard v. Kelley, 629 F. Supp. 2d 115, 130 (D. Mass. 2009) (citing Foley v. Polaroid Corp., 400 Mass. 82, 100, 508 N.E.2d 72 (1987); Santiago v. Fenton, 891 F.2d 373, 387 (1st Cir. 1989)). Here, the Northbridge Defendants did not institute criminal proceedings against the Plaintiff stemming from this matter. While the Plaintiff was subsequently arrested by Det. Jarrod Woeller on October 22, 2017 for Assault to Murder, the arrest was made pursuant to a valid warrant issued by the Haverhill Police Department; not the Northbridge Police Department. Plaintiff also asserted a claim for malicious prosecution against former Co-Defendant Kevin McCarthy, but said claim was dismissed at the summary judgment stage.  As Plaintiff's claim for malicious prosecution against the Northbridge Defendants fails as a matter of law, the Defendants respectfully request that this Honorable Court dismiss said claim against them prior to trial as well.

## 9) Probable Length of Trial and Whether Jury or Non-Jury. The Defendants anticipate that trial will last approximately four (4) full days. Plaintiff anticipates (5) full days. It will be a jury trial.

## 10) Names and Addresses of Witnesses on Behalf of Defendants at Trial and the Purpose of the testimony

All witnesses are fact witnesses.

1) Chief Walter Warchol
c/o Northbridge Police Department
1 Hope Street
Whitinsville, MA 01588

2) Lieutenant Owen LaBrie
c/o Northbridge Police Department
1 Hope Street
Whitinsville, MA 01588

3) Sgt. John Ouilette
c/o Northbridge Police Department
1 Hope Street
Whitinsville, MA 01588

4) Sgt. Brian Petrinelli
c/o Northbridge Police Department
1 Hope Street
Whitinsville, MA 01588

5) Jarrod Woeller
c/o Northbridge Police Department
1 Hope Street
Whitinsville, MA 01588

6) Kevin McCarthy
164 Golden Hill Road
Haverhill, MA 01830

7) Shannon Sorenson
Program Director of Emergency Services for Riverside Community Care,
c/o Riverside Community Care
270 Bridge Street #301
Dedham, MA 02026

8) Captain Robert LaChapelle
c/o Northbridge Fire Department
193 Main Street
Whitinsville, MA 01588

9) John Sheridan, Firefighter
c/o Northbridge Fire Department
193 Main Street

Whitinsville, MA 01588

10) Kai Kunz
20 Nelson Street
Webster, MA 01570

**Plaintiff's Witnesses:**

1)  Chief Walter Warchol
    Northbridge Police Department
    1 Hope Street
    Whitinsville, MA 01588

2) Lieutenant LaBrie
    Northbridge Police Department
    1 Hope Street
    Whitinsville, MA 01588

3) Sgt. John Ouilette
    Northbridge Police Department
    1 Hope Street
    Whitinsville, MA 01588

4) Sgt. Brian Petrinelli
    Northbridge Police Department
    1 Hope Street
    Whitinsville, MA 01588

5) Jarrod Woeller
    Northbridge Police Department
    1 Hope Street
    Whitinsville, MA 01588

6)  Kevin McCarthy
    164 Golden Hill Avenue
    Haverhill, MA

7)  Keeper of the Records
    MHI, LLC

8)  Keeper of the Records
    Gardner Police Department
    Gardner, Massachusetts

9)  Diane Lebow, Intake Coordinator
    MRMC
    Milford, MA

10)  Shannon Donovan, RN
     MRMC
     Milford, MA

11)  Ellen Leahy, Assistant Director of Quality Management
     Riverside Community Care Inc.
     450 Washington Street
     Dedham, MA 02026

12)  Theresa Waggett, RN
     UHS of Westwood Pembroke, Inc. ("Pembroke")
      Pembroke Hospital
      Plymouth, MA

13)  Laurie, Dispatcher
     Northbridge Police Department
     One Hope Street
     Northbridge, MA

14.  Ms. Gaylord, Dispatcher
     Northbridge Police Department
     One Hope Street
     Northbridge, MA

15)  Kenneth Kutcher
      Church Street

Northbridge, MA

16) Brooks Place
    Francistown, NH

17) Keeper of the Records
    Board of Registration in Med
    Barretts Mills Rd.
    W. Concord, MA

18) Keeper of the Records
    Haverhill Police Department
    Haverhill, MA

19) Officer Dejordy
    Northbridge Police
    One Hope Street
    Northbridge, MA

20) Det. Ratte
    Haverhill Police Department
    Haverhill, MA

21) Det. Bennedetti
    Haverhill Police Department
    Haverhill, MA (has Kai's cell phone as of 10/22/11)

22) Ferris Grenier
    Riverside Community Care
    Dedham, MA

23) Robert Zimmerman
    Keeper of the Records
    Carpenters Trust
    Marlborough Street
    Boston, MA 02116

24)  Kathy Flammia, Realtor (Seller)
     Haverhill Properties
     Haverhill, MA

25)  Keeper of the Records
     Office of the District Attorney, Essex County, Haverhill Dist. Ct.
     Cell Phone Triangulation report Jan. 2012

26)  Nicholas Ogden, Assistant Attorney General
     Massachusetts Attorney General's Office.
     One Ashburton Place
     Boston, MA 02110

27)  Stephen Zurange, FBI Agent
     Federal Bureau of Investigation
     466 Main Street
     Worcester, MA

28)  Dr. Samuel Connelly, M.D.
     MRMC
     Milford, MA

29)  Dr. Negus, M.D.
     MRMC
     Milford, MA

30)  Keeper of the Records
     MassHealth
     Quincy, MA

31)  Elizabeth Berte
     Riverside Community Care Inc.
     450 Washington Street
     Dedham, MA 02026

32)  Kai Kunz. Plaintiff
      P.O. Box 23

Uxbridge, MA

33)  John Sheriden, EMT
     Northbridge Fire Department
     193 Main Street
     Whitinsville, MA 01588

34)  Robert K. LaChappel, EMT
     Captain, Northbridge Fire Department
     193 Main Street
     Whitinsville, MA 01588

35)  Jen Lawrence, Dispatch
     Northbridge Police Department
     193 Main Street
     Whitinsville, MA 01588

36)  Keeper of the Records
     MRMC
     Milford, MA

37)  Carlos Charles
     Pembroke Hospital
     Plymouth, MA

38)  Keeper of the Records [MSP State Crime Lab Records]
     Mass State Police
     New Braintree, MA

**Defendants' List of Proposed Exhibits**

Exhibit 1 - Report of Sgt. John Ouillette and Supplemental report
of Timothy LaBrie or Sgt. Petrinelli

Exhibit 2 - Supplemental Narrative for Patrolman Thomas DeJordy

Exhibit 3 - "Hit List"

Exhibit 4 - Request for Regional Broadcast

Exhibit 5 - Sgt. Petrinelli's Responses to Plaintiff's Requests for Admissions

Exhibit 6 - Intake Call Sheet for Kai Kunz, dated 10/19/11

Exhibit 7 -Application for and Authorization of Temporary Involuntary Hospitalization filed by Sgt. Ouillette, dated 10/17/11; Application for And Authorization of Temporary Involuntary Hospitalization filed by Lt. LaBrie, dated 10/18/11

Exhibit 8 - Northbridge Fire Department Incident Report, dated 10/18/11

Exhibit 9 – Deposition Transcript of Robert LaChapelle

Exhibit 10 -Deposition Transcript of John Sheridan

Exhibit 11 -Personal Information Form of Kai Kunz, dated 10/ 19/11

Exhibit 12 -Application for And Authorization of Temporary Involuntary Hospitalization filed by Dr. Robert A. Negus, dated 10/19/11; Milford Regional Medical Center Authorization for Transfer of Kai Kunz to Pembroke Hospital, dated 10/19/11

Exhibit 12 -Milford Regional Medical Center Transfer Chart for Kai Kunz, dated 10/19/11

Exhibit 13 -Group Progress and Participation Notes for Kai Kunz, dated 10/20/16

Exhibit 14 -Pembroke Hospital Brief Discharge Summary of Kai Kunz, dated 10/21/11

Exhibit 15 -Arrest Warrant for Kai Kunz and Warrant Arrest Documents

Exhibit 16 – Deposition Transcript of John Ouillette

Exhibit 17 – Deposition Transcript of Timothy LaBrie

Exhibit 18 – Deposition Transcript of Walter Warchol

Exhibit 19 – Letter from Kai Kunz to Riverside Community Care, dated 7/1/13

Exhibit 20 – Letter from Riverside Community Care to Kai Kunz, dated 7/8/13

Exhibit 21 – Deposition Transcript of Kai Kunz

Exhibit 22 – Plaintiff's Answers to Interrogatories

Defendants may introduce portions of the Plaintiff's or other witnesses deposition transcripts, Answers to Interrogatories or Responses to Requests for Admissions, under FRE 801(d)(1)(A), to the extent any of those witnesses' testimony at trial is inconsistent with such depositions, Answers to Interrogatories or Responses to Requests for Admissions.

**Plaintiff's Proposed Exhibits:**

1. Plaintiff's Complaint.

2. Applications (4) pursuant to §12(a) for plaintiff's involuntary hospitalization.

3. MRMC medical records, (p. 000001 et seq.); and billing records.

4. Northbridge Fire Department report. (10/18/11)

5. Deposition of Kevin McCarthy.

6. Milford Regional Medical Center policy "Patient at Risk of Harm to Self or Others: Close Watch, Suicide Precautions and 1:1.

7. Riverside Community Care records for Kai Kunz

8. Officer Dejordy's Report.

9. Records of Mary Akkiki, Riverside.

10. M.G.L.A. c. 258 s.4 Presentment Letter:

11. Plaintiff's Deposition 10/24/16, 250 Summer Street, Boston, MA, Stephen Orlando, Esq.

12. Psychiatric Assessment by Dr. Hoffman, 10/19/11: ("Need to verify Section 12") Designated Physician Form signed.

13. Calendar October 2011:

14. Plaintiff's Affidavit: 3/20/17

15. Plaintiff's Answers to Interrogatories.

16. Dr. Kevin W. Olden's January 16, 2016, and 2017, medical expert opinion letters, medical specialty; psychiatry (emergency psychiatry), Dr. Olden's CV.

17. Riverside Letters to Mr. Kunz.

18. Massachusetts Attorney General, Presentment Coordinator, M.G.L.A. c. 258 acknowledgment letter.

19. Pembroke letters to Kai Kunz

20. M.G.L.A. c. 123 §12(a) and (b) excerpt from 2011 Judicial Standards Manual for Massachusetts District Court Department

21. Haverhill District Court, Docket Entries

22. Labrie Answers to Interrogatories in USDC No. 14.

23. Officer Petranelli's Rule 36 Responses.

24. Chief Warchol's Deposition.

25. Northbridge Police Officer Labrie's Deposition

26. Northbridge Police Officer Ouillette's Deposition

27. Officer Ouillette's Rule 36 Responses

28. Massachusetts Board of Registration in Medicine
    2011 Statistics as to number of licensed
    psychiatrists in Central Massachusetts

29. Officer Labrie's Rule 36 Responses

30. Chief Warchol's Rule 36 Responses

31. Fax 2137 hrs. 10/18/11 NB Police to MRMC.

32. Northbridge Police Report 10/17/11

34. Northbridge Police Report 10/18/11

35. Northbridge Police Dispatch records 10/17/11 to 10/18/11

36. Northbridge Police telephone records and Log Books: 10/01/11 through
10/25/11.

37. Haverhill Fire Department Records

38. Haverhill Police Report and NB Internal Affairs Reports.

39. Officer Ouillette NBPD Personnel File

40. Officer Labrie NBPD Personnel File

41. Officer Petrinelli NBPD Personnell File

42. FBI Records, Stephen Zringue

43.  Brooks Place Promissory Note and Judgement against McCarthy.

44.  Cell Phone Triangulation report Jan. 2012. (164 Golden Hill Rd., Haverhill, MA)

45.  Plaintiff's MassHealth billing records October 2011.

46.  Kevin McCarthy's Answer to Complaint.

47.  Kevin McCarthy Answers to Interrogatories.

48.  Town of Northbridge Answers to Interrogatories.

49.  Ouillette's Answers to Interrogatories.

50.  LaBrie's Answers to Interrogatories.

51.  Town of Northbridge Answers to Complaint.

Plaintiff may introduce portions of the Plaintiff's or other witnesses deposition transcripts, Answers to Interrogatories or Responses to Requests for Admissions, under FRE 801(d)(1)(A), to the extent any of those witnesses' testimony at trial is inconsistent with such depositions, Answers to Interrogatories or Responses to Requests for Admissions.

Respectfully submitted,
Plaintiff Kai Kunz,
By his attorney,


/s/ David Ashworth


_____
David E. Ashworth, Esq.
35 West Main Street
West Brookfield, MA 01585
(508) 891 1968
BBO# 549850